# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KENDRICK LEE,

Petitioner,

v.

RANDY HEPP,

Respondent.

Case No. 14-CV-373-JPS

ORDER

Kendrick Lee filed his petition for a writ of habeas corpus on April 1, 2014. (Docket #1). The Court screened the petition and allowed Mr. Lee to proceed on his claims, which relate to alleged ineffective assistance of counsel and the lack of disclosure of a confidential informant's identity. (Docket #6). The matter is fully briefed and the Court will now render its decision.

1.      FACTUAL AND PROCEDURAL BACKGROUND

1.1      Activity Leading to Charges

A confidential informant told Milwaukee police officers that an unnamed individual had been selling cocaine from a house located at 3748 North 17th Street ("the house" or "the house in question"). *Wisconsin v. Lee*, 2013 WI App 55, ¶ 2, 347 Wis. 2d 548, 830 N.W.2d 722.[1] Based upon that information, the police obtained a warrant to search the house for drugs and later raided it. *Id.*

Mr. Lee was the only individual in the house at the time of the raid. *Id.* at ¶ 3. He was found standing next to a coffee table that held crack cocaine, sandwich bags, latex gloves, a scale, a razor blade, and money—all

---

[1] The Court draws much of the factual and procedural background from the Wisconsin Court of Appeals' opinion in Mr. Lee's case. Mr. Lee has not argued that the Court of Appeals' opinion contained factual errors.

items that are typically associated with the sale of crack cocaine. *Id.* One of the police officers searched Mr. Lee and found keys to the house in Mr. Lee's pocket. *Id.*

The officers arrested Mr. Lee, and Mr. Lee was later charged with possession of a firearm by a felon, possession of cocaine with intent to deliver, and keeping a drug house. *Id.* at ¶¶ 2, 4. Mr. Lee's case was tried to a jury. *Id.* at ¶ 4.

1.2     Trial

At trial, Mr. Lee's defense strategy was to disassociate himself from the house. *Id.* at ¶ 6. He planned to do this by showing that he was in the house for the sole purpose of helping his brother move. *Id.* As the Wisconsin Court of Appeals explained:

> First, as to the reason he was found in the house, Lee explained that his brother Tommie asked him and his brother Jimmie to help move Tommie's belongings to the basement of the house. According to Tommie's testimony, he and his wife had been evicted earlier that day from his sister-in-law's residence and were given permission to store items in the basement of the house by an individual who lived there, known to Lee and his brothers only as "Rowe." Second, as to the reason he was found in possession of keys to the house, Lee explained that, after he and Jimmie completed the move, Jimmie locked the house, and he and Jimmie went outside. Lee testified that, a few minutes before the police raided the house, Jimmie gave him the keys to the house so that he could reenter the house to use the bathroom. As to how the brothers obtained the keys to the house, Tommie testified that "Rowe" gave him the keys and that Tommie then gave the keys to Jimmie. Lee testified that he was in the room containing the drugs and drug dealing paraphernalia at the time of the raid because, as he was washing his hands in the bathroom, he heard a noise coming from the room that contained the drugs and went to investigate. Lee testified that the noise he heard was apparently the police breaking the front window and that, as

soon as he entered the room and looked out the front window, the police saw him and entered the house.

*Id.*

The State, however, challenged this narrative and testimony. Officer Mark Harms testified that he searched the basement, but did not notice any boxes that would be consistent with someone moving. (Docket #11, Ex. 19, 146:15–21). Officer Brian Burch testified that he searched Mr. Lee and found a single "mast key ring," that held keys to the house and unrelated keys belonging to Mr. Lee (Docket #11, Ex. 20, 22:12–25:9); the State relied on this testimony to show that Mr. Lee, in fact, used the house regularly, *Lee*, 2013 WI App 55, ¶ 21. The prosecutor undermined Tommie's testimony about his eviction by pointing out that an eviction could not take place until after court proceedings, which, in Tommie's case, would not have occurred for more than a month after the search. (Docket #11, Ex. 20, 86:2–19). Tommie also could not identify any items that were moved into the basement. (Docket #11, Ex. 20, 86:20–87:7). The prosecutor undermined Jimmie's testimony by pointing out his prior inconsistent testimony regarding the move. (Docket #11, Ex. 20, 101:21–102:11). Finally, the prosecutor undermined Mr. Lee's, Tommie's, and Jimmie's credibility further by pointing out their prior criminal convictions. (Docket #11, Ex. 20, 66:14–21, 92:12–15; Docket #11, Ex. 21, 10:6–11).

The jury found Mr. Lee guilty on both drug charges, but acquitted him on the firearm charge. (Docket #11, Ex. 21, 91:15–93:23). Mr. Lee was sentenced to 12 years of imprisonment, consisting of 7 years of confinement and 5 years of extended supervision as to each count, with those sentences to run concurrently. (Docket #11, Ex. 1).

### 1.3    Post-Trial Motion and Direct Appeal

Mr. Lee filed two post-conviction motions with the trial court, the first arguing that he had received ineffective assistance of counsel and the second requesting that the trial court conduct *in camera* proceedings and disclose the identity of the confidential informant. (Docket #20, Exs. 1, 2). The trial court denied both motions. (Docket #11, Exs. 23, 24).

Mr. Lee then filed his direct appeal, re-asserting these arguments. *See Lee*, 2013 WI App 55. Specifically, Mr. Lee argued that his counsel was ineffective in three ways: (1) failing to disassociate Mr. Lee from the house in question (Docket #27, Ex. 2, 17–24); (2) failing to limit improper impeachment of Mr. Lee's witnesses (Docket #27, Ex. 2, 24–28); and (3) failing to effectively challenge the testimony of Officer Burch (Docket #27, Ex. 2, 28–31). Mr. Lee also argued that the trial court had erred in failing to conduct an *in camera* proceeding regarding the confidential informant. (Docket #27, Ex. 2, 41–44).

The Court of Appeals rejected all four arguments and affirmed Mr. Lee's conviction. *E.g.*, *Lee*, 2013 WI App 55 at ¶ 32. Mr. Lee requested review by the Wisconsin Supreme Court, but was denied. (Docket #11, Exs. 6, 8).

Mr. Lee then filed the petition that is now before the Court (Docket #1), maintaining the same ineffective assistance and confidential informant arguments.

### 2.    ANALYSIS

Because the state courts adjudicated Mr. Lee's claims on their merits, the Court may grant a writ of habeas corpus only if the state court's decision was: (1) "contrary to…clearly established federal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) "was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1–2). *See also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004) (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)).

"A state court decision is contrary to clearly established federal law if the court applies a rule that plainly contradicts the Supreme Court's governing rule or if it comes to a result different than did the Supreme Court on substantially identical facts." *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). *See also Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Williams*, 529 U.S. at 405–06; *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir. 2013)).

"A decision involves an 'unreasonable application' of Supreme Court precedent if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013) (citing *Williams*, 529 U.S. at 407). However, the Supreme Court has made clear that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. In fact, Mr. Lee will be entitled to habeas relief only if he can "show that the state court's ruling on the claim…was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 526 U.S. 86, 102 (2011). *See also Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013).

"A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013) (quoting

*Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010); citing *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003)).

In making any of these determinations, the Court reviews the decision "'of the last state court to address a given claim on the merits.'" *Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013) (quoting *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012)). In this case, that last reasoned decision is the opinion of the Wisconsin Court of Appeals.

With those general principles in mind, the Court now turns to analyzing Mr. Lee's claims.

### 2.1    Ineffective Assistance of Counsel

The majority of Mr. Lee's habeas claims relate to his contention that he received ineffective assistance of counsel as trial.

Under the Sixth Amendment, Mr. Lee enjoyed the right to effective assistance of counsel. In order to demonstrate that his right was violated, Mr. Lee must satisfy the two-prong test described in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Campbell v. Reardon*, --- F.3d ----, 2015 WL 1028706, *8 (7th Cir. Mar. 10, 2015). "First he must show that his counsel's performance was deficient because it 'fell below an objective standard of reasonableness.'" *Campbell*, 2015 WL 1028706, *8 (quoting *Strickland*, 466 U.S. at 687–88). Second, he must show that he suffered prejudice as a result of counsel's ineffective assistance, "which means that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Campbell*, 2015 WL 1028706 at *8 (quoting *Strickland*, 466 U.S. at 694).

"To establish deficient performance under *Strickland*, Campbell must identify acts or omissions by counsel that fell below an objective standard of reasonableness and could not have been the result of professional judgment."

*Campbell*, 2015 WL 1028706 at *9 (citing *Strickland*, 466 U.S. at 688, 690). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Campbell*, 2015 WL 1028706 at *9 (internal quotations omitted) (quoting *Harrington*, 562 U.S. at 105; *Strickland*, 466 U.S. at 690). "'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Campbell*, 2015 WL 1028706 at *9 (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, Mr. Lee is required to show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the likelihood of a different result must be 'substantial, not just conceivable.'" *Campbell*, 2015 WL 1028706 at *15 (quoting *Harrington*, 562 U.S. at 111–12). This determination "requires consideration of the 'totality of the evidence before the…jury.'" *Harris v. Thompson*, 698 F.3d 609, 645 (7th Cir. 2012) (quoting *Strickland*, 466 U.S. at 695). That is because, where the record "only weakly support[s]" the verdict, the Court must view the verdict as "more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696.

With the *Strickland* standard in mind, though, the Court notes the difficulty of prevailing on an ineffective assistance claim in a habeas case. As the Seventh Circuit recently noted in *Campbell*, habeas relief on the basis of

ineffective assistance is generally unlikely, in light of the fact that the Court must review the state court's decision under AEDPA's deferential standards. *See Campbell*, 2015 WL 1028706 at *8 (however, the Court notes that, in a somewhat rare outcome, the Seventh Circuit in *Campbell* ultimately found that the petitioner had satisfied § 2254(d) on his claim of ineffective assistance). "Under AEDPA, 'the bar for establishing that a state court's application of the *Strickland* standard was "unreasonable" is a high one.'" *Campbell*, 2015 WL 1028706 at *8 (quoting *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009)). "'When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Campbell*, 2015 WL 1028706 at *8 (quoting *Harrington*, 562 U.S. at 105). In other words, here, the Court must take "a 'highly deferential' look at counsel's performance, through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, --- U.S. ----, 131 S.Ct. 1388, 1403 (2011) (internal citations omitted) (quoting *Strickland*, 466 U.S. at 689; *Knowles v. Mirzance*, --- U.S. ----, 129 S.Ct. 1411, 1413 (2009)). As the Supreme Court has termed it, this standard is "doubly deferential." *Knowles*, 129 S.Ct. at 1420.

Having outlined the contours of the ineffective assistance standard, the Court now turns to evaluate each of Mr. Lee's claims for ineffective assistance.

### 2.1.1 Failure to Disassociate Mr. Lee from the House

Mr. Lee's first claim for ineffective assistance is that his trial counsel should have done more to disassociate him from the house where he was arrested. As the Court has already mentioned, Mr. Lee's primary defense was that he was at the house only because he was helping his brother move.

Mr. Lee contends that his trial counsel should have called both the house's owner and another of Mr. Lee's brothers to testify. (Docket #22, Ex. 2 at 11). Mr. Lee believes that those additional witnesses could have: (1) established the actual identity of "Rowe," the house's tenant, via the lease agreement; and (2) in turn, allowed Mr. Lee's attorney either to call "Rowe" or to argue that "Rowe" was the drug dealer originally identified by the confidential informant. (Docket #22, Ex. 2 at 11).

The Court of Appeals considered and rejected this argument:

¶ 19 Lee first argues that defense counsel was ineffective by failing to introduce evidence that the house was leased to Ramon Lavon Towns and then to establish that Ramon was the individual the brothers knew only as "Rowe." We understand Lee to be arguing that evidence that the house was leased to "Rowe" would have been additional evidence distancing Lee from the house, and thereby would have weakened the State's claim that Lee exercised management and control over the house, an element of the keeping a drug house charge.

¶ 20 We conclude that defense counsel was not deficient in failing to introduce the lease as evidence for the purpose of helping to establish that Lee was not exercising management and control over the house, and that instead "Rowe" was, because defense counsel testified at the *Machner* hearing that the brothers never informed her that a person named "Rowe" was selling drugs out of the house. While defense counsel acknowledged that she was given a copy of a lease agreement that provided that Ramon Lavon Towns was a co-tenant, defense counsel indicated that neither Lee nor any of his brothers told her anything about a person named "Rowe" to suggest that "Rowe" was Ramon Lavon Towns who was leasing the house. Counsel's duty to investigate witnesses does not extend to witnesses not identified by the defendant as important to the defense when there is no other reasonably available source of information suggesting the need for investigation. We acknowledge that Wandell Lee, another one of Lee's brothers, testified at the *Machner* hearing that he

informed defense counsel shortly after Lee's arrest that "Rowe" was Ramon Towns. However, we must accept the circuit court's determinations as to witness credibility and, even though the court did not make an explicit finding about Wandell's credibility, we assume the court made an implicit finding that Wandell was not credible based on the court's denial of Lee's postconviction motion. *See Jacobson v. American Tool Cos., Inc.*, 222 Wis.2d 384, 390, 588 N.W.2d 67 (Ct. App. 1998) ("If a circuit court does not expressly make a finding about the credibility of a witness, we assume it made implicit findings on a witness' credibility when analyzing the evidence.").

*Lee*, 2013 WI App 55 at ¶¶ 19-20. In sum, the Court of Appeals found that defense counsel's performance did not meet the first prong of *Strickland*, because neither Mr. Lee or any of his brothers had told her about "Rowe." *Id.* In other words, defense counsel could not have performed deficiently where she never received the information that Mr. Lee now believes she should have elicited through testimony.

This was neither clearly erroneous nor an unreasonable application of the law. To be sure, defense counsel had a duty to "go beyond discovery provided by the State and conduct her own pretrial investigation," by, among other things, contacting witnesses. *See, e.g.*, *Campbell*, 2015 WL 1028706 at *14 (citing *Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006); *Washington v. Smith*, 219 F.3d 620, 632 (7th Cir. 2000); *Crisp v. Duckworth*, 743 F.2d 580, 584 (7th Cir. 1984); *Anderson v. Johnson*, 338 F.3d 382, 391–93 (5th Cir. 2003)). If, for instance, she had not spoken to Mr. Lee's brothers, then *perhaps* she might have performed deficiently; likewise if she had not followed up on a potential witness offered by Mr. Lee or his brothers. But the Court of Appeals found that the opposite occurred, so its legal determination was not clearly erroneous or an unreasonable application of the law.

Moreover, the Court of Appeals' factual determinations were not unreasonable. There is no question that defense counsel spoke with all of Mr. Lee's brothers and examined the lease. *See Lee*, 2013 WI App 55 at ¶ 20. The only possible evidence of deficient performance was Mr. Lee's brother's statement that he told defense counsel about "Rowe." *Id.* at ¶¶ 19–20; (Docket #11, Ex. 24, 31:23–33:13). But the Court of Appeals found that the trial court must have discounted that statement as not credible, *Lee*, 2013 WI App 55 at ¶ 20 (citing *Jacobson*, 588 N.W.2d 67), a finding that is not clearly erroneous and that is also entitled to deference, especially in light of the fact that the trial court's finding involved a credibility determination. *See, e.g.*, *Sprosty v. Buchler*, 79 F.3d 635, 643 (7th Cir. 1996) ("implicit resolution of a factual dispute that can be fairly inferred from the state court record" is entitled to presumption of correctness); *Wrinkles v. Buss*, 537 F.3d 804, 829 (7th Cir. 2008) ("It is well established that our obligation to defer to the factual findings of state courts extends to appellate courts." (citing *Summer v. Mata*, 449 U.S. 539, 546–47 (1981); *Miranda v. Leibach*, 394 F.3d 984, 999 (7th Cir. 2005); *Meniola v. Schomig*, 224 F.3d 589, 592–93 (7th Cir. 2000); *Sprosty*, 79 F.3d at 643; *Holland v. McGinnis*, 963 F.2d 1044, 1048 (7th Cir. 1992)).

Thus, the Court of Appeals' determination in this regard was not legally or factually problematic. In fact, the Court agrees that defense counsel's performance was not deficient insofar as she did not inquire further into the lease or the identity of "Rowe."

### 2.1.2 Failure to Introduce Additional Evidence Regarding Eviction

Mr. Lee next argues that defense counsel was ineffective in failing to introduce additional evidence regarding his brother's eviction. As already noted at trial, the State undermined Mr. Lee's brother's testimony that he had

been evicted by questioning whether Mr. Lee's brother knew that evictions generally take more than a month to occur. Mr. Lee now contends that defense counsel should have: (1) called an employee from the sheriff's department who could testify that the eviction actually occurred on the date of Mr. Lee's arrest; and (2) called his brother's wife to testify that the eviction occurred that same day, because his brother's wife would have been a better witness. (Docket #22, Ex. 2 at 11–13, 29–31).

The Court of Appeals considered and rejected these arguments.

¶ 11 Lee first contends that trial counsel was ineffective in failing to introduce corroborating evidence to prove that Tommie was evicted from his sister-in-law's residence on the day in question. As indicated, Lee argues that evidence about the eviction was central to his defense theory because it was a critical part of Lee's explanation for why he was in the house at the time of the police raid.

¶ 12 Trial counsel called three witnesses to establish that Tommie was evicted on the day in question: Lee and his two brothers, Jimmie and Tommie. Lee contends that this strategy was ineffective because Lee and his brothers all had poor credibility. Specifically, all three individuals had numerous prior criminal convictions, the numbers of which were disclosed to the jury, and, because they were brothers and therefore presumed to be biased toward each other, the jury was likely to discredit their testimony regarding the eviction. Lee argues that, given these facts, it was essential that defense counsel pursue a defense strategy that would have bolstered the Lee brothers' credibility. Lee asserts this could have been accomplished by calling Tommie's wife, Jacklyn, to testify about the eviction because she had direct contact with the Milwaukee County sheriff's office concerning the timing of the eviction and she was at the residence from which she and Tommie were being evicted while the eviction was in process. Lee argues that calling Jacklyn to testify would have bolstered the Lee brothers' credibility because Jacklyn had no prior criminal convictions and was not directly related to Lee. Lee

also argues that counsel should have called as a witness an employee of the sheriff's office, Melissa Emond, who established at the *Machner* hearing that Tommie was evicted between 9:30 [a.m.] and 10:30 a.m. on the same day as the police raid. According to Lee, the evidence from Jacklyn and Emond would have provided objective and unimpeachable evidence of Tommie's eviction on the day in question and therefore bolstered the testimony from Lee and his brothers that the eviction actually occurred.

¶ 13 Lee also argues that defense counsel was ineffective for failing to object to a line of questioning by the prosecutor directed to Tommie raising the incorrect suggestion that, as a matter of law, the eviction could not have taken place on the day of the raid. At trial, the prosecutor asked Tommie whether he was aware the sheriff cannot evict a person until eviction proceedings are complete, and that the eviction proceedings against Tommie were not completed until one and a half months after the police raid. Tommie testified that he was not so aware. Lee argues that defense counsel should have objected to this line of questioning regarding the eviction process and that counsel should have informed the jury as to what Lee considers to be the correct law regarding the eviction process.

¶ 14 We assume, without deciding, that defense counsel was deficient in failing to introduce credible evidence corroborating Tommie's testimony that he had been evicted on the day of the police raid. We therefore turn to determine whether Lee has established that he was prejudiced by counsel's deficient performance. We conclude that Lee has not demonstrated prejudice.

¶ 15 Lee contends that he was prejudiced by counsel's deficient performance because, had defense counsel presented credible evidence to corroborate Tommie's eviction claim, there is a reasonable probability that the jury would have believed that Lee was at the house for the reason he stated, and that he was not using the house for drug dealing. Lee argues that testimony from Jacklyn and the employee from the Milwaukee County sheriff's office likely would have resulted in a different verdict because the State's evidence against him was weak. Lee

contends that the State's evidence against him was weak because the State did not recover any evidence, other than finding Lee in the house, connecting Lee to the house, such as his DNA, his fingerprints, mail addressed to him at the house address, or other personal identifiers that would usually be found in a person's house. Because the State's evidence against him was weak, it follows, according to Lee, that there is a reasonable probability that the outcome would have been different had defense counsel presented evidence to corroborate Tommie's eviction claim, which, he submits, effectively placed him in the house for an innocent purpose.

¶ 16 A significant flaw with Lee's argument is that he fails to address Officer Harms' unchallenged testimony that he did not see any items in the basement supporting Lee's defense that he was at the house to move Tommie's belongings into the basement. Officer Harms, the lead investigator in the case, testified that when he walked through the house, he did not observe any of the items Lee and his brothers claimed were moved into the basement. Lee and his brothers testified that they moved the following items into the basement: glass tables, bed frames, box springs and moving boxes. Although Officer Harms testified that he did not conduct a thorough search of the basement, there is a strong inference that these items would be large enough that they would not have escaped Officer Harms' attention based on even a quick view of the basement. Officer Harms' testimony that he did not observe any of these items in the basement during his search clearly undercuts Lee's explanation for why he was in the house at the time of the raid. Lee provided no evidence challenging this part of Officer Harms' testimony, nor does he explain on appeal why Officer Harms would not have readily seen these items during his search for drugs in the basement.

¶ 17 Because the heart of Lee's defense theory was so thoroughly undermined by Officer Harms' testimony that he found nothing in the basement consistent with Tommie's eviction claim, given the balance of the evidence in this case, we conclude that there is not a reasonable probability that the additional evidence Lee points to would have altered the

outcome of this case. As summarized above, there was undisputed evidence that Lee was found, alone, next to crack cocaine and other items commonly associated with crack cocaine dealing, and with Officer Harms' testimony, the "eviction defense" essentially collapsed. Accordingly, because Lee has not demonstrated prejudice, we conclude that defense counsel was not ineffective for failing to present corroborating evidence supporting Tommie's testimony that he had been evicted earlier on the day of the police raid.

*Lee*, 2013 WI App 55 at ¶¶ 11–17. In sum, the Court of Appeals found that Mr. Lee could not prevail on this ineffective assistance claim because his defense was not prejudiced. In other words, even assuming that defense counsel performed deficiently in failing to call the eviction-related witnesses, that failure did not matter, because the evidence of Mr. Lee's guilt was so overwhelming.

To begin, the Court points out that the Court of Appeals acted appropriately in assuming prejudice and rejecting Mr. Lee's claim on the basis of lack of prejudice. "A defendant's failure to establish either prong of the [*Strickland*] test is fatal to his ineffective assistance of counsel claim." *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (citing *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002)).

Second, the Court of Appeals' lack-of-prejudice finding was consistent with the law, reasonable, and based on reasonable findings of fact. With respect to prejudice, Mr. Lee was required to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687. The Court of Appeals found that Mr. Lee had not met this burden. Specifically, the Court of Appeals found two pieces of evidence very important: (1) that Mr. Lee "was found, alone, next to crack cocaine and other items commonly associated

with crack cocaine dealing"; and (2) that Officer Harms had testified that, upon searching the basement of the house, he did not see any of the items that Mr. Lee had allegedly helped move. *Lee*, 2013 WI App 55 at ¶¶ 16–17. The Court of Appeals concluded that, because Mr. Lee had failed to produce any evidence to challenge Officer Harms' testimony, those two pieces of evidence caused Mr. Lee's eviction defense to "essentially collapse[]." *Id.* This determination was reasonable. It rested on a correct reading of the trial court proceedings and the facts, and it was logical.

Mr. Lee now attempts to argue that the Court of Appeals overstated Officer Harms' testimony (Docket #22, Ex. 2 at 32–36), but he is incorrect. The Court of Appeals made very clear that "Officer Harms testified that he did not conduct a thorough search of the basement," but nonetheless found that the limited nature of his search did not undermine the credibility of his testimony. *Lee*, 2013 WI App 55 at ¶ 16. Rather, the Court of Appeals found "a strong inference that these items [glass tables, bed frames, box springs, and moving boxes] would be large enough that they would not have escaped Officer Harms' attention based on even a quick view of the basement." *Id.* The Court agrees. Contrary to Mr. Lee's contention, even if Officer Harms had been focused primarily on searching for contraband, the fact that he could not recall the large items that Mr. Lee asserts were present is credible evidence of the absence of such items. (*See* Docket #11, Ex. 19 at 145:8–20, 146:15–21). Thus, the Court rejects Mr. Lee's argument that the Court of Appeals overstated Officer Harms' testimony.

In the end, the Court agrees with the Court of Appeals that, even assuming that the jury were to have credited testimony showing that Mr. Lee's brother had been evicted, the outcome would have been the same.

Officer Harms' testimony—which entirely undermined the eviction defense—would still have been unchallenged.

For these reasons, the Court finds that the Court of Appeals' determination was appropriate and rejects Mr. Lee's claim to the contrary.

### 3.1.3 Failure to Examine the House

Mr. Lee next argues that defense counsel was ineffective for failing to visit the house to take pictures of the property in the basement. (Docket #22, Ex. 2 at 12–13). This claim is both procedurally defaulted and meritless.

The claim is procedurally defaulted because the Court of Appeals rejected it after Mr. Lee had failed to raise it in his post-conviction motion or develop the issue on appeal:

> We observe that Lee did not allege in his postconviction motion that defense counsel was ineffective for failing to preserve evidence of the alleged move. To the extent that Lee does touch on this topic in his appellate briefs, he does not present a fully developed argument. Accordingly, we do not address that argument.

*Lee*, 2013 WI App 55 at ¶ 16, n.4 (citing *State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992)). Both the failure to raise an argument and the failure to develop an argument are "independent and adequate state law ground[s] of procedural default" that bar this Court's habeas review. *E.g.*, *Perry v. McCaughtry*, 308 F.3d 682, 692 (7th Cir. 2002). Mr. Lee's failure to demonstrate cause or actual prejudice—and the lack of record support therefor—establishes that the Court may rely on Mr. Lee's procedural default to deny this claim.

However, even if the claim were not procedurally defaulted, the Court would still reject it as meritless. There is no evidence that defense counsel would have found evidence of the alleged move if she had searched the

basement; to the contrary, Officer Harms' testimony supports a finding that counsel *would not* have found such evidence. And, at the *Machner* hearing, Mr. Lee's brother's wife testified that she did not know where her belongings had been moved when she met with defense counsel. (Docket #11, Ex. 24, 46:8–10). Thus, defense counsel could not have known that the items would have been in the basement and, indeed, it is more likely than not that the items were not in the basement. This claim is purely speculative and, accordingly, meritless. *See, e.g., Perry v. McCaughtry*, 308 F.3d 682, 688 (7th Cir. 2002); *United States v. Williams*, 934 F.2d 847, 852 (7th Cir. 1991) (citing *United States v. Asubonteng*, 895 F.2d 424, 428 (7th Cir. 1990) ("conclusory allegations do not satisfy *Strickland*'s prejudice component)).

### 3.1.4 Failure to Object to Improper Impeachment of Defense Witnesses

Mr. Lee next argues his counsel was ineffective in failing to challenge three separate occurrences of allegedly-improper impeachment.

The first instance relates to the prosecutor's supposition that any legal eviction would not have occurred until more than a month after the day in question. (*See* Docket #11, Ex. 20, 86:2–19). Ultimately, this proved incorrect: Mr. Lee's brother was, in fact, evicted on the day in question. (*See* Docket #11, Ex. 24 at 35:4–38:8).

Mr. Lee contends that his counsel should have challenged the prosecutor's representation. He is probably correct, and so the Court will assume that defense counsel's performance was deficient in this regard.

Even so, the Court of Appeals considered and rejected this argument based upon the lack of prejudice. *Lee*, 2013 WI App 55 at ¶ 13. The Court has already approved of that finding and, reaffirming it here, rejects this claim.

The second instance relates to the prosecutor's assertion that, contrary to Mr. Lee's brother's testimony, a gun found in the house was registered to his cousin. (Docket #11, Ex. 20, 82:3–83:3). Mr. Lee's brother, Tommie, had testified that he purchased the gun off the street. (Docket #11, Ex. 20 at 82:3–8). Attempting to undermine this testimony, the prosecutor asked "Would it surprise you to know that [your cousin] is the registered owner of that gun?" (Docket #11, Ex. 20 at 83:1–2). Tommie responded "Yes, it would." (Docket #11, Ex. 20 at 83:1–2). The exchange ends there, without the prosecutor introducing evidence to support the proposition that the gun, in fact, was registered to the cousin. Nonetheless, the prosecutor raised the point again in her closing argument. (Docket #11, Ex. 21 at 59:16–19).

Mr. Lee argues that defense counsel should have objected to this—whether during Tommie's testimony or closing arguments. (Docket #22, Ex. 2 at 15). Again, the Court will assume that he is correct and that defense counsel's performance was deficient in that regard.

Nonetheless, the Court agrees with the state that this deficiency was not prejudicial and, therefore, must reject this claim as a basis for relief.[2] It could not possibly have prejudiced Mr. Lee's defense on the gun charge, because Mr. Lee was ultimately acquitted of that charge. Perhaps Mr. Lee believes that it further undermined Tommie's credibility, but: (1) Tommie's credibility had already been undermined in other ways (suspicious lack of recollection and significant amounts of prior convictions, for instance) (*see*

---

[2]In spite of the fact that Mr. Lee raised this claim in the Court of Appeals, the Court of Appeals did not expressly address it. Nonetheless, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient." *Harrington*, 562 U.S. at 98.

Docket #11, Ex. 21 at 60:12–17); and (2) even if the jury had found Tommie to be credible, Tommie was not present in the house during the move and Mr. Lee still had not undermined Officer Harms' otherwise credible testimony. Thus, the Court finds that there is not a reasonable probability that the outcome would have been any different if defense counsel had challenged the prosecutor's discussion of the gun. Accordingly, there was no prejudice and the Court must reject this claim.

The third instance relates to the prosecutor's assertion that Mr. Lee's other brother, Jimmie, had provided inconsistent testimony at Mr. Lee's prior revocation hearing. (Docket #11, Ex. 20 at 102:4–11). At trial, the prosecutor asked Jimmie "[n]ow isn't it true when you provided prior testimony at a hearing on February 2nd of 2010, you indicated there were four people there taking stuff into the basement, being you, Kendrick, Robert Spencer, and someone you couldn't remember his name." (Docket #11, Ex. 20 at 102:4–8). Jimmie responded "[n]o, I ain't never said that. Never even came out of my mouth about Robert Spencer helping us move at all. That never came out of my mouth." (Docket #11, Ex. 20 at 102:9–11). That was the end of the exchange; the prosecutor did not introduce evidence of the prior inconsistent statement and defense counsel did not request such evidence.

The Court does not believe that defense counsel's failure to object was deficient. While the State has been unable to produce Jimmie's testimony from the initial revocation hearing, there is no reason to believe that the prosecutor's characterization was incorrect; assuming it was correct, defense counsel would not have had any obligation to object to the question. *See, e.g.*, *Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir. 2010) ("Obviously, an attorney is not constitutional[ly] deficient for failing to lodge a meritless objection."); *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005).

However, even assuming that the prosecutor's implication was incorrect and that defense counsel performed deficiently in failing to object, such failure still did not prejudice Mr. Lee. To begin, there is no reason to believe that the jury did not credit Jimmie's testimony that he had not testified inconsistently at the prior hearing. But, again, in light of the testimony of Officer Harms, which the Court of Appeals found compelling, the slight benefit of rehabilitating Jimmie's credibility would not have been enough to sway the jury's verdict. There is not a reasonable probability that a defense objection to the prosecutor's question would have resulted in a different outcome. Accordingly, having found that counsel's performance was not deficient on this point and that Mr. Lee did not suffer any prejudice, the Court is obliged to reject this claim.

### 3.1.5   Failure to Impeach Officer Burch

Mr. Lee's final ineffective assistance claim is that defense counsel was ineffective in failing to impeach the testimony of Officer Burch, who had testified about finding keys to the house in Mr. Lee's possession. (Docket #22, Ex. 2 at 17–19). Officer Burch testified that he found two sets of keys in Mr. Lee's possession, one set corresponding to the house in question and one set being other personal keys belonging to Mr. Lee. (*See* Docket #11, Ex. 20 at 22:15–23:7). The set of keys corresponding to the house were attached to Mr. Lee's other, personal set of keys. (Docket #11, Ex. 20 at 22:23–23:2). Mr. Lee argues that counsel should have impeached Officer Burch's testimony on this point, by showing: (1) Officer Burch was relying solely on his memory, because he had not created a written report regarding the keys; (2) another officer's report did not mention Mr. Lee's personal set of keys; and (3) the police station's inventory report did not mention Mr. Lee's personal set of keys. (Docket #22, Ex. 2 at 17–19).

The Court of Appeals considered and rejected this claim:

¶ 22 Lee contends that counsel should have cross-examined Officer Burch regarding the fact that: (1) Officer Burch did not prepare a police report in this case and was relying exclusively on his memory when he testified that there was a master key ring containing keys to the house, the security gate, and Lee's personal keys; (2) the police report omitted any mention of Lee's personal keys being found in Lee's possession; and (3) property inventory records did not list keys as among the personal items found in Lee's possession. Lee contends that, because of counsel's failure to cross-examine Officer Burch on these topics, the jury likely discredited Lee's testimony that keys to the house were not on the same key ring as Lee's personal keys and instead credited Officer Burch's testimony that the keys were on the same key ring. It follows, according to Lee, that the outcome would have been different on the keeping a drug house charge had counsel more effectively cross-examined Officer Burch. We reject Lee's contentions.

¶ 23 Regardless whether Lee's personal keys were found on one master key ring holding the keys to the house and to the security gate, the critical point here is that there is no dispute that Lee was in possession of the house keys when he was discovered in the house. The only explanation that he provided at trial for possessing the keys—that he was in the house to use the bathroom after helping his brother Jimmie move Tommie's belongings into the basement—was heavily undermined by Officer Harms' testimony that he observed no items in the basement consistent with the eviction claim. Once Lee's reason for being in the house was discredited, it was far less important which keys were on which key ring. A strong inference to be drawn by the jury at that point, based on evidence that Lee was the only person found in a house that, according to Officer Harms, fit the criteria for a drug house, was that Lee was keeping a drug house. Accordingly, Lee was not prejudiced by defense counsel's failure to more aggressively cross-examine Officer Burch about whether Lee's personal keys were found on a master key ring holding the keys to the house.

*Lee*, 2013 WI App 55 at ¶¶ 22–23. In other words, the Court of Appeals again resolved this claim solely on the basis of lack of prejudice, as it is permitted to do. *See, e.g.*, *Carter*, 760 F.3d at 635 (*Rastafari*, 278 F.3d at 688).

This conclusion was reasonable as to both the law and the facts. As the Court of Appeals pointed out, Officer Harms' testimony regarding the lack of moving materials in the basement totally undermined Mr. Lee's reason for being in the house. *Lee*, 2013 WI App 55 at ¶ 23. Thus, the issue of whether the house keys were attached to or separate from Mr. Lee's keyring is ultimately of little relevance. Had the jury concluded that the keys were separate, they still faced Officer Harms' testimony, which undermined Mr. Lee's reason for being in the house, and fully supported the jury's verdict. The Court of Appeals was correct: there is not a reasonable probability that further questioning by defense counsel in this regard would have changed the outcome of the trial.

For this reason, the Court finds that the Court of Appeals' determination was appropriate and rejects Mr. Lee's claim in this regard.

### 2.2 Failure to Disclose Confidential Informant's Identity

Mr. Lee's only other claim relates to the trial court's refusal to grant Mr. Lee's request for a post-conviction *in camera* review to determine whether Mr. Lee should be entitled to know the identity of the confidential informant ("the CI"). (Docket #22, Ex. 2 at 36–40). As the Court has already discussed, the CI reported that an unidentified individual had been selling drugs from the house. *Lee*, 2013 WI App 55 at ¶ 2. That was the full extent of the CI's involvement in the case; the CI never identified Mr. Lee, specifically, and did not witness any of the activity in this case. But Mr. Lee argued that, if called to testify, the CI could have testified that Mr. Lee *was not* the person that the CI had witnesses selling drugs from the residence. *Id.* at ¶ 25.

The trial court rejected Mr. Lee's request for an *in camera* review, finding that the fact that the CI might have witnessed another person selling drugs from the house was irrelevant in light of the fact that Mr. Lee, himself, had been found in the house, "strongly suggesting that Lee was also selling drugs from the house." *Id.* at ¶ 26.

The Court of Appeals analyzed this claim extensively. It first outlined Wisconsin's law related to the disclosure of confidential informants' identities. *Id.* at ¶ 27–28. Wis. Stat. § 905.10 controls such disclosure, giving the state a general privilege to protect the identities. Wis. Stat. § 905.10(1). Wis. Stat. § 905.10(3)(b) provides an exception to that general rule:

> If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case…[and the] state…invokes the privilege, the judge shall give the…state…an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.

*Lee*, 2013 WI App 55 at ¶ 27 (quoting Wis. Stat. § 905.10(3)(b)). As the Court of Appeals pointed out, the Wisconsin Supreme Court elaborated on this standard further in *State v. Outlaw*, 108 Wis. 2d 112, 321 N.W.2d 145 (1982). *Outlaw* explained that a defendant seeking the identity of a confidential informant carries a fairly low burden to show the possibility that the confidential informant could supply testimony "necessary to a fair trial." 108 Wis. 2d at 125–26, 321 N.W.2d 145 (citing Wis. Stat. § 905.10(3)(b)). The Court of Appeals went on:

> ¶ 29 Applying the statutory standard as explained in *Outlaw* to the facts of this case, we conclude that Lee has not met even his *minimal* burden of showing that there is a possibility that the confidential informant at issue here may be able to give testimony necessary to a fair determination of Lee's guilt or

innocence. In this case, the factual dispute centered on why Lee was in the house at the time of the police raid and whether he exercised management and control over the house. Based on what is provided in Officer Harms' affidavit, the confidential informant might have been able to testify that he observed only one person sell cocaine from the house during the month prior to the house raid. Officer Harms' affidavit does not indicate that the informant observed an individual who fit Lee's description. We observe, however, that Officer Harms' affidavit does not suggest that the informant purported to be at the house on a constant basis during the pertinent time period. Instead, the affidavit only suggests that at a minimum one person was selling drugs out of the house. Lee does not explain how testimony that someone other than Lee was selling drugs from the house is probative of what he was doing at the time of the raid.

¶ 30 The analysis of whether an *in camera* review should be conducted focuses on the alleged offense and how the additional information from the informant might assist an actual, potential defense on the facts of the case. Here, Lee was found alone in a house for which he had keys and was standing next to a table containing crack cocaine and typical accoutrements associated with cocaine dealing. Thus, although the informant was in a position to identify, or at least provide additional details regarding, the person who he observed selling cocaine, Lee has failed to make the minimum showing that the informant might be able to give testimony bearing on whether Lee was also dealing cocaine out of the house.

¶ 31 Because Lee has not met his initial burden under *Outlaw* for the circuit court to conduct an *in camera* review, we conclude that the trial court properly denied Lee's motion to conduct such a review.

*Lee*, 2013 WI App 55 at ¶¶ 29-31.

The Court begins by noting that *Outlaw* relies upon the Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53 (1957), which is the controlling precedent in the area of the disclosure of confidential informant

identities. *See Outlaw*, 108 Wis. 2d at 118, 321 N.W.2d 145 (citing *Roviaro*, 353 U.S. 53). *Roviaro* provides that the privilege to withhold the identity of a confidential informant gives way if such information "'is relevant and helpful' to his defense 'or is essential to a fair determination of a cause.'" *United States v. Harris*, 531 F.3d 507, 514 (7th Cir. 2008) (quoting *Roviaro*, 353 U.S. at 60–61). This requires "balanc[ing] 'the public interest in protecting the flow of information against the individual's right to prepare his defense,'" in light of "'the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors.'" *Harris*, 531 F.3d at 514 (quoting *Roviaro*, 353 U.S. at 62).

The Seventh Circuit has distinguished between two types of confidential informants: "tipsters" and "transactional witnesses." *United States v. McDowell*, 687 F.3d 904, 911 (7th Cir. 2012) (citing *Harris*, 531 F.3d at 515). Tipsters generally provide police with basic information that results in a search warrant, whereas transactional witnesses are individuals who participated in the actual crime charged against the defendant in the case in question. *McDowell*, 687 F.3d at 911(citing *Harris*, 531 F.3d at 515). The case for disclosure of the identity of a tipster "is generally weak." *McDowell*, 687 F.3d at 911.

In this case, the CI was clearly a tipster. The CI did not participate in the events in question in any way, but instead merely provided general information leading to a search warrant.

The Court of Appeals' decision certainly was not contrary to precedent. It applied a standard that is consistent with *Roviaro*.

Its decision also was not an unreasonable application of the law or the facts. As to the facts, the Court of Appeals correctly summarized the state of

the record. As to the law, the Court of Appeals found that Mr. Lee had not met his burden to show that the CI "might have been able to give testimony bearing on whether Lee was also dealing cocaine out of the house." *Lee*, 2013 WI App 55 at ¶ 30. This is consistent with the distinction made by the Seventh Circuit between tipsters and transactional witnesses. *See McDowell*, 687 F.3d at 911. Accordingly, the Court could not possibly conclude that "the state court's ruling on the claim…was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. Rather, the Court of Appeals' determination appears consistent with existing law.

The Court, therefore, is obliged to reject Mr. Lee's confidential informant claim.

3.      CONCLUSION

Having found that there was no error in Mr. Lee's state court proceedings, the Court is obliged to deny his petition for a writ of habeas corpus.

Finally, under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Mr. Lee must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should be issued, additional

arguments are not necessary here. Simply put, under AEDPA's deferential standard, there can be no debate that the Court of Appeals' decision must be upheld on habeas review. On the ineffective assistance claims, the Court generally agreed that lack of deficient performance and lack of prejudice strongly supported the Court of Appeals' determinations. As to the confidential informant claim, the Court of Appeals' determination was consistent with existing case law. No reasonable jurist would find it debatable that the Wisconsin Court of Appeals identified the correct standards and reached reasonable conclusions of law and fact in Mr. Lee's case. As a consequence, the court must deny a certificate of appealability as to Mr. Lee's petition.

Accordingly,

IT IS ORDERED that Mr. Lee's petition for a writ of *habeas corpus* (Docket #1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a certificate of appealability as to the petitioner's petition be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2015.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge